UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Darllel Orr,** | ) | CASE NO. 4:25 CV 1335 |
| Plaintiff, | ) ) | JUDGE PAMELA A. BARKER |
| v. | ) ) | Memorandum of Opinion and Order |
| **Cynthia Davis, et al.,** | ) ) | |
| Defendants. | ) | |

**INTRODUCTION**

*Pro se* Plaintiff Darllel Orr filed this action under 42 U.S.C. § 1983 against Southern Ohio Correctional Facility ("SOFC") Warden Cynthia Davis, Trumbull Correctional Institution ("TCI") Warden Mr. Davis, and TCI Corrections Officer Mr. Aderholt.[1] Plaintiff contests a guilty finding at his January 2023 Rules Infraction Board ("RIB") Hearing at TCI, which contributed to an increase in his security level and his transfer to SOCF. He contends he was denied his Sixth Amendment right to be present at his hearing. He seeks an order enjoining enforcement of his security level increase, transfer to TCI, a new RIB hearing and monetary damages.

---

[1] Exhibit 1 to Plaintiff's Complaint (Doc. No. 1-3 at PageID #: 19) identifies this Defendant as Officer Aberholtta.

1

**BACKGROUND**

On January 27, 2023, TCI officers searched Plaintiff's cell. The officers indicated that they had received multiple reports from confidential sources that Plaintiff was importing drugs into the prison through counterfeit legal mail and selling those drugs to other inmates. (Doc. No. 1-3 at PageID #: 19). The search yielded one sheet of "toon,"[2] one partial sheet of "toon" wrapped in cellophane hidden in a cracker box disguised as legal mail, and three knotted baggies hidden in a dry milk powder pouch that contained segmented strips and smaller pieces of "toon" some of which had legal writings on them. (Doc. No. 1-3 at PageID #: 19). The sheet of toon, the partial page of toon and the contents of the knotted baggies all had identifying characteristics seen in previous toon investigations at TCI. (Doc. No. 1-3 at PageID #: 19). The strips segments and pieces had legal mail writings on them. The seized materials were field-tested and produced positive results for the presence of synthetic drug material and/or Methamphetamine derivatives. (Doc. No. 1-3 at PageID #: 19). Additionally, officers found in Plaintiff's possession an outgoing self-addressed stamped envelope with a fictitious return address from Attorney Brian Mitchem. Upon further investigation, the officers determined Attorney Brian Mitchem was also fictitious and lacked record with the Ohio Attorney Bar Association and Ohio Supreme Court. (Doc. No. 1-3 at PageID #: 19). The officers also found cash slips for postage addressed to approved visitor Rachel Jones, and cash slips receipts indicating numerous documents had already been sent to her. (Doc. No. 1-3 at PageID #: 20). Plaintiff was given a conduct report charging him with procuring or attempting to procure, unauthorized drugs, aiding, soliciting, or

---

[2] The conduct report does not define the term "toon;" however, it appears to be paper of heavy stock on which illegal drugs can be spread and cut up for easy distribution.

2

collaborating with another to procure unauthorized drugs or to introduce unauthorized drugs into a correctional facility, and unauthorized possession, manufacture, or consumption of drugs or any intoxicating substance. (Doc. No. 1-3 at PageID #: 19, 20).

Plaintiff alleges that although the drugs were in his possession in his legal mail, his cellmate claimed ownership of the drugs and confessed to the TCI staff members. Plaintiff claims he sought to call these staff members as witnesses at his RIB hearing, but the RIB did not find his cellmate's confession to be credible, and his request was denied. Plaintiff believes his cellmate's confession would have exonerated him. The RIB found him guilty of the conduct charges and imposed sanctions of 60 days in restricted housing and 30 days of telephone restriction.

The was not Plaintiff's first conduct charge for importing drugs into the prison through counterfeit legal mail. Less than three months earlier, on November 2, 2022, officers had searched his cell after receiving multiple tips that he was importing drugs disguised as legal mail and discovered sheets of paper containing synthetic narcotics. Because his conduct charge on January 27, 2023 was his second charge for the same conduct in less than three months, Plaintiff's security level was increased, and he was transferred to SOCF.

Plaintiff filed this action in the United States District Court for the Southern District of Ohio on January 31, 2025. He claims that the RIB violated his Sixth Amendment right to call witnesses by not allowing him to call the staff members to whom his cellmate confessed. He seeks an order enjoining enforcement of the security increase, return to TCI, a new hearing and monetary damages.

3

**STANDARD OF REVIEW**

Although pro se pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir. 1998).

4

**DISCUSSION**

The Court's ability to review prison disciplinary proceedings is limited. District courts have no authority to review a disciplinary committee's resolution of factual disputes, or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill*, 472 U.S. 445, 455 (1985). The only question for the Court to determine is whether the hearing complied with the basic requirements needed to satisfy due process. The standard is not a difficult one to meet. To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972). Prisoners do not have a Sixth Amendment right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. *Id*. at 569-70; *Jennings v. Lemaster*, No. 22-5780, 2023 WL 5672748, at *2 (6th Cir. Mar. 29, 2023).

The question of what process is due, however, is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government

5

action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221.

Generally, unless the disciplinary action is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found in the case. *Sandin*, 515 U.S. at 484. Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement is considered to be "within the range of confinement normally expected for one serving [a prison sentence]." *Sandin*, 515 U.S. at 487. A prisoner has no constitutional right to be incarcerated in a particular prison or to be held under a specific security classification. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Cash v. Reno*, No. 97-5220, 1997 WL 809982 (6th Cir. Dec. 23, 1997). An increase in security classification level and transfer to another prison will not trigger due process protection unless the increase results in transfer to Extended Restricted Housing ("ERH") or a super-maximum prison.

Here, Plaintiff does not allege that he lost good time credits or that his security increase and prison transfer resulted in placement in ERH under super-maximum conditions. In fact, placement in ERH requires a separate multistep procedure with its own due process protections. Plaintiff is contesting his finding of guilt on the conduct charge. ERH does not appear to be an issue in this Complaint. None of the exhibits to the Complaint reflect a loss of good time credits. Based on the information before the Court, it does not appear that

6

Plaintiff was deprived of a protected liberty or property interest, and due process protections were not needed.

Even if Plaintiff did lose good time credits, his allegations do not suggest that he was denied due process. He complains only that the prison did not allow him to call staff members who heard his cellmate confess to owning drugs that were found in Plaintiff's possession with counterfeit legal mail addressed to the Plaintiff. Prison officials have discretion to allow testimony and may deny witnesses if they believe their proposed testimony would not add information to the proceedings or would create a security concern. Prison authorities did not find the confession to be credible and determined that there was more than enough evidence to support a finding of Plaintiff's guilt. He was not denied due process.

**CONCLUSION**

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

Date: September 15, 2025

 s/*Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE